UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| IN RE: ) | |
| ) | |
| UTICA TOWNSHIP VOLUNTEER FIRE ) | CASE NO. 25-90840-AKM-11 |
| FIGHTERS ASSOCIATION, ) | |
| ) | CHAPTER 11 (SUBCHAPTER V) |
| DEBTOR. ) | (Joint Administration Requested) |
| ) | |
| ) | |
| UTICA TOWNSHIP FIRE DEPARTMENT ) | |
| INCORPORATED, ) | CASE NO. 25-90841-AKM-11 |
| ) | |
| DEBTOR. ) | CHAPTER 11 (SUBCHAPTER V) |
| ) | |

# DEBTORS' FIRST DAY MOTION FOR AN ORDER APPROVING INTERIM USE OF CASH COLLATERAL

\*\*\*   \*\*\*   \*\*\*

Utica Township Volunteer Fire Fighters Association (the "Association"), and Utica Township Fire Department, Incorporated (the "Department" and, together with the Association, the "Debtors"), as debtors and debtors-in-possession, respectfully move the Court for an interim order authorizing the Debtor's use of cash and cash equivalents in which their estates and any entity other than their estates has or may assert any interest (the "cash collateral"). In support of this motion (the "Motion"), the Debtors rely on and incorporates by reference the *Declaration of Matthew Owen* (the "Owen Declaration"), and further state:

## JURISDICTION

1. On the date hereof (the "Petition Date"), the Debtors filed voluntary petitions for relief under subchapter V of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Debtors are requesting joint administration.

2. Under 11 U.S.C. § 1184, the Debtors continue to operate their businesses and manage their property as debtors-in-possession.

3. The Court has jurisdiction over this case and the subject matter of this Motion pursuant to 28 U.S.C. §§ 1334 and 157(a), the general order of reference issued by the United States District Court for the Southern District of Indiana on July 11, 1984, and Rule 83.8 of the District Court's local rules.

4. Venue of the chapter 11 cases and the Motion in this Court is proper under 28 U.S.C. §§ 1408 and 1409.

5. Resolution of this Motion is a core proceeding in which the Court is authorized to enter a final order by 28 U.S.C. § 157(b)(2)(A) and (M). The Court can do so without offending Article III of the Constitution because "the action at issue stems from the bankruptcy itself[.]" *Stern v. Marshall,* 564 U.S. 462, 499 (2011).

6. Pursuant to Local Rule B-9013-3(b), the Debtors submitted drafts of this and other First-Day Motions (as that term is defined by Local Rule B-9013-3) to the Assistant United States Trustee for the Southern District of Indiana prior to the filing of the petitions.

7. The statutory bases for the relief sought in this Motion are 11 U.S.C. §§ 105, 361, 362, and 363 and Rules 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## BACKGROUND

8. The Association is a nonprofit corporation incorporated in the 1954 under the laws of the state of Indiana, with its principal office located in Clarksville, Indiana. The Department is an Indiana nonprofit corporation incorporated in 2002; it shares with the Debtor a location, board of directors, and operational history. Matthew Owen is president of the board of directors of the Association and chief executive officer of the Department.

2

9. As described more fully in the Owen Declaration, the Debtors provided fire protection and emergency medical services to unincorporated areas in Southern Indiana's Clark and Floyd Counties. In 2023, the Debtors' then CEO, Jamey Noel, was charged in Clark County with over 30 criminal counts involving theft and embezzlement from the Debtors to which Mr. Noel pleaded guilty. Immediately thereafter, Mr. Owen and the board assumed control of the Debtors. As a result of Mr. Noel's actions, customers began cancelling contracts for emergency and fire protection and prevention services. Mr. Owen's new vision for the Debtors is to focus solely on providing emergency medical transport to patients.

10. The Debtors lack knowledge of any creditor that has or may assert an interest in the Debtors' cash collateral. A lien search conducted with the Indiana Secretary of State did not return any UCC financing statements.

11. On August 21, 2024, the Board of Fire Trustees, Utica Township Fire Protection District (the "District") filed a complaint in Clark County (Indiana) Circuit Court captioned as *Board of Fire Trustees, Utica Township Fire Protection District v. Utica Township Volunteer Fire Fighters Association, et al.*, Case No 10D06-2408-PL-000075 (the "District Action"). A copy of the Complaint filed in the District Action is attached as **Exhibit A**. In its lawsuit, the District alleges that it owns all the Debtors' property and requests "Temporary and permanent injunctive relief and specific performance immediately prohibiting Defendants from selling any and all property, regardless of the manner in which such property is currently titled[.]" The District's legal basis for asserting ownership over the Debtor's assets is unclear.

12. The Debtors do not believe that the District has any interest, let alone an ownership interest, in the Debtors' property, including cash collateral. Nonetheless, out of an abundance of caution, the Debtors request authorization to use cash collateral.

## Relief Requested

13.     The Debtors seek the entry of an order, substantially in the form attached hereto (the "Interim Proposed Order") under 11 U.S.C. §§ 105(a), 361, 362, and 363 and Bankruptcy Rules 2002, 4001, and 6004 authorizing the Debtors to use cash collateral in form, substance, and spirit consistent with the 13-week budget attached hereto as **Exhibit B** (the "Budget") in order to meet ordinary and necessary expenditures on an interim basis until the date that an order resolves this Motion on a final basis.

## Grounds for Relief

14.     The Bankruptcy Code provides that a creditor is entitled to adequate protection of its interest in estate property when the automatic stay prevents it from realizing the value of that interest.  11 U.S.C. § 362(d).

15.     The Bankruptcy Code contemplates three forms of adequate protection, including "a cash payment or periodic cash payments to [the secured creditor], to the extent that the [automatic] stay . . . results in a decrease in the value of [the secured creditor's] interest in" the collateral the secured creditor is stayed from liquidating.  11 U.S.C. § 361(1).

16.     Certainly, where an undersecured creditor's collateral is declining in value, it is entitled, under § 361(d)(1), to cash payments or additional security in the amount of the decline.  *See United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs.*, 484 U.S. 365, 370 (1988). But, the law is equally clear, at least since a unanimous Supreme Court handed down *Timbers of Inwood* more than thirty years ago, that creditors are not entitled to compensation, in the form of adequate protection or otherwise, for the pre-confirmation delay imposed by bankruptcy reorganization in realizing the value of its collateral.  *See id.* at 379 ("That secured creditors do not bear one kind of reorganization cost hardly means that they bear none of them.").

17. To the extent that the District has a valid lien against cash collateral, the District's interests are protected by the Debtors' operation of their businesses and maintenance of collateral, which is made possible by the proposed use of cash collateral.

18. In order to preserve the Debtors' viability as a going-concern, and to avoid immediate and irreparable harm, the Debtors request interim permission for the post-petition use of cash collateral, as requested herein. This relief is necessary for the Debtors to maintain business relationships and confidence with vendors, suppliers, and customers, to satisfy other working capital and operational needs, to meet accrued and ongoing obligations to employees, and to maintain employee morale. Without immediate use of the cash collateral, the Debtors' ability to operate would be destroyed.

19. Absent immediate access to the requested relief, the Debtors would be forced to cease operations immediately, which would cause significant harm to creditors, employees, and other parties-in-interest. Such a sudden shut down would destroy the ability of the Debtors to continue generating revenue and operating or to develop a standalone plan for payment of creditors.

20. The Debtors submit that should the District possess a lien against the cash collateral, the District's interest is adequately protected, and that the Court should therefore grant the relief requested herein.

21. Absent immediate relief as requested herein, the Debtors would likely have to cease business operations to the material detriment of creditors, employees, and other parties-in-interest. The Debtors need to ensure the availability of such working capital now. The Debtors anticipate using cash collateral to fund its day-to-day operations. The Debtors will also use cash collateral to satisfy payroll obligations coming due during the Budget period, without which it would face a sharp decline in employee morale and retention. The use of cash collateral is necessary to demonstrate to the Debtors' customers, suppliers, vendors, and employees that the Debtors have sufficient capital to ensure ongoing operations.

22. The Debtors therefore request that the Court hold a preliminary hearing on this Motion as soon as the Court's schedule permits, and that the Court hold a final hearing on this Motion after the required 14-day period prescribed by Bankruptcy Rule 4001(b) has passed.

23. Entry of the tendered proposed order is in the best interests of the estate and the Debtors' creditors because use of cash collateral will minimize disruption of the Debtor's operations and increase the possibilities for a successful reorganization.

24. Notice of this Motion has been provided to the Office of the United States Trustee for the Region 10, the Debtor's secured creditors, the 20 largest unsecured creditors of the Debtor, and certain governmental entities, counsel, and parties-in-interest, as more fully stated in the omnibus certificate of service to be filed by the Debtors. The Debtors submit that no other or further notice need be provided.

## PRAYER

WHEREFORE, the Debtors respectfully requests that the Court (i) grant the Motion on an interim basis in the form and substance of the Proposed Interim Order; (ii) approve the interim use of cash collateral consistent with the Budget attached as **Exhibit B**; and (iii) when appropriate, approve the use of cash collateral on a final basis, following such final hearing; and (iv) grant such other relief as is just and proper.

Respectfully submitted,

/s/ William P. Harbison
WILLIAM P. HARBISON
JOSEPH H. HADDAD
ADAM B. BUCKMAN
SEILLER WATERMAN LLC
Meidinger Tower – 22nd Floor
462 S. Fourth Street
Louisville, KY 40202
Phone: 502-584-7400 | Fax: 502-583-2100
E-mail: harbison@derbycitylaw.com
E-mail:  haddad@derbycitylaw.com
E-mail: buckman@derbycitylaw.com

*Proposed counsel for the Debtor*

G:\doc\WPH\Utica Township Fire Dept\Pleadings\First Day\First Day [ Cash Collateral [ Association0.docx