UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| IN RE: | ) |
| | ) |
| UTICA TOWNSHIP VOLUNTEER FIRE FIGHTERS ASSOCIATION, *et al.*,[1] | ) CASE NO. 25-90840-AKM-11 ) (Jointly Administered) |
| | ) |
| DEBTORS. | ) CHAPTER 11 (SUBCHAPTER V) ) |

**DEBTORS' MOTION FOR AN ORDER
AUTHORIZING THE PRIVATE SALE OF CERTAIN MOTOR VEHICLES
TO JOHN JONES SALEM DEALERSHIPS, INC.,
FREE AND CLEAR
OF ALL LIENS, CLAIMS, INTERESTS, AND ENCUMBRANCES
AND
NOTICE OF OBJECTION DEADLINE**

\*\*\*   \*\*\*   \*\*\*

Utica Township Volunteer Fire Fighters Association (the "Association"), and Utica Township Fire Department, Incorporated (the "Department" and, together with the Association, the "Debtors"), as debtors and debtors-in-possession, request an order authorizing the private sale of certain motor vehicles (the "Property," as defined more particularly below) to John Jones Salem Dealerships, Inc. ("John Jones"), free and clear of all liens, claims, interests, and encumbrances. In support of this motion (the "Motion"), the Debtors rely on and incorporate by reference the *Declaration of Matthew Owen in Support of Chapter 11 Petitions and First Day Motions* [ECF No. 4] (the "Owen Declaration") and further state as follows:

## INTRODUCTION

1. This Motion is the first of several that the Debtors intend to bring at the outset of the Chapter 11 Cases in order to reduce their balance sheets to match their current and prospective circumstances. The Debtors now operate on a smaller scale than they did a

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Utica Township Volunteer Fire Fighters Association (3426) and Utica Township Fire Department, Inc. (8532).

few years ago—they now provide only emergency medical services and not firefighting services—but they are saddled with a fleet of vehicles that does not suit them. The expense associated with maintaining their bloated fleet has crippled the Debtors' cash flow and threatened the viability of their operations. Reducing their fleet and selling other property that their operations no longer require, through the relief requested in this Motion and further relief to be sought by separate motion or through a plan, will eliminate purchase-money debts and generate cash to fund the Debtors' reorganization, sustain their operations during the Chapter 11 Cases, and make payments to their creditors.

2. The Property that this Motion proposes to sell consists of four collectible muscle cars owned by the Association and in the Association's possession, which are not used in the Association's operations and are being stored and insured at the Association's expense. The vehicles to be sold are identified in the table below along with their proposed sale prices.

FIG. 1: THE PROPERTY

| Year | Make | Model | VIN | Proceeds to be Received by Ass'n |
|---|---|---|---|---|
| 2020 | Dodge | Charger | 2C3CDXL9XLH122664 | $50,000.00 |
| 2019 | Dodge | Challenger | 2C3CDZL98KH502984 | $77,500.00 |
| 2021 | Dodge | Challenger | 2C3CDZL90MH534251 | $77,500.00 |
| 2015 | Chevrolet | Camaro | 2G1FZ1EE0F9700215 | $55,000.00 |
| TOTAL | | | | $260,000.00 |

3. The Property is not subject to any known liens. However, the Utica Township Fire Protection District (the "District") has asserted ownership or other interests in certain of the Debtors' property in state-court litigation that was pending on the Petition Date. It is unclear to the Debtors whether the District's claims extend to the Property.

4. This Motion proposes that the Property be sold directly to John Jones, an auto dealer, without further consideration of competing bids or notice to the Court or parties-in-interest. The Debtors, in their business judgment, have determined that a private

sale to John Jones, which will not be subject to sales commission or sales tax, will result in the highest and best return on the Property, considering the associated costs and the time value of money.

## JURISDICTION

5. On July 22, 2025 (the "Petition Date"), the Debtors filed voluntary petitions for relief under subchapter V of chapter 11 of the Bankruptcy Code, initiating these chapter 11 cases (the "Chapter 11 Cases"). Pursuant to the *Order Granting Motion for Joint Administration* [ECF No. 26], the Chapter 11 Cases are jointly administered.

6. The Debtors continue to operate and manage their property as debtors-in-possession under 11 U.S.C. § 1184. Pursuant to 11 U.S.C. § 1183, the U.S. Trustee appointed Dennis Perrey as the subchapter V trustee in these Chapter 11 Cases. [ECF No. 18.]

7. The Court has jurisdiction over the Chapter 11 Cases and the subject matter of this Motion under 28 U.S.C. §§ 1334 and 157(a), the general order of reference issued by the United States District Court for the Southern District of Indiana on July 11, 1984, and Rule 83.8 of the District Court's local rules.

8. Venue of the Chapter 11 Cases and the Motion in this Court is proper under 28 U.S.C. §§ 1408 and 1409 and Rule B-1002-1(e) of this Court's local rules.

9. Resolution of this Motion is a core proceeding in which the Court is authorized to enter a final order by 28 U.S.C. § 157(b)(2)(N). The Court can do so without offending Article III of the Constitution because "the action at issue stems from the bankruptcy itself[.]" *Stern v. Marshall,* 564 U.S. 462, 499 (2011).

10. The statutory bases for the relief sought in this Motion are 11 U.S.C. §§ 105(a), 363(b) and (f), 1107, and 1108. This Motion is brought under Rules 2002 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rules B-6004-1 and B-6004-2 of this Court's local rules.

## BACKGROUND

11. The Debtors are small business debtors within the meaning of 11 U.S.C. § 101(51D), and subchapter V of chapter 11 of the Bankruptcy Code applies to these Chapter 11 Cases.

12. The Association is a nonprofit corporation incorporated in 1954 under the laws of the state of Indiana, with its principal office located in Clarksville, Indiana. The Department is an Indiana nonprofit corporation incorporated in 2002; it shares with the Association a location, board of directors, and operational history. Matthew Owen is president and chief executive officer of both Debtors.

13. As described more fully in the Owen Declaration, the Debtors for many years provided firefighting and emergency medical services to unincorporated areas in Indiana's Clark and Floyd Counties. The Association focused primarily on providing emergency medical ambulance service, with contracts from Clark County and Floyd County for 911 ambulance services. The Department provided fire protection, fire prevention, emergency medical services, and related services to Utica Township, New Albany Township Fire District, and the Franklin Township Trustee.

14. On November 8, 2023, the State of Indiana charged the Debtors' former CEO, Jamey Noel, with over 30 felonies, including multiple counts of theft from the Association between 2019 and 2023. Later, the State filed charges against Mr. Noel's wife and daughter for stealing from the Association. Mr. Noel ultimately pleaded guilty to many of the charges, including all the charges involving theft from the Association, as did his wife and daughter, and they were all ordered to pay restitution to the Association as part of their sentences. Mr. Owen's new vision for the Debtors is to focus solely on providing emergency medical transport to patients.

15. The Property consists of four collectible muscle cars owned by the Association which were acquired under Mr. Noel's management and have never been used in the Debtors' operations. As such, retained ownership and possession of the property

offers no upside and instead burdens the Debtors' estates with the expense of storing and insuring it.

16. Mr. Noel's arrest drew considerable attention to the Debtors and their fleet of vehicles, and led some prospective buyers to make the Debtors unsolicited offers for some of the vehicles, including those at issue in this Motion. Before deciding to accept John Jones's offer, the Debtors sought competing bids from other dealers in the area and had resulting communications with four of them, including John Jones. One ultimately declined to bid, recognizing that the Property consists of collector's items that have a smaller market than other vehicles. Three dealers ultimately bid, with one offering $195,000 and another offering $255,000. John Jones bid $260,000, as set forth in the offer letter attached hereto as **Exhibit A** (the "John Jones Proposal"), which was the highest bid received for the Property. The John Jones Proposal has no contingencies.

17. The Debtors know of no relationship between John Jones and its insiders on the one hand and the Debtors, their insiders, and the United States Trustee on the other hand. After the sale, the Debtors and their insiders will not have any relationship with John Jones or its insiders, though they may do business again in the future which is not now anticipated.

18. The Property contains no personally identifiable information.

19. There are no known liens against the Property, but, on August 21, 2024, the District filed a complaint in the Clark Superior Court No. 6, which is attached hereto as **Exhibit B**, initiating proceedings styled as *Board of Fire Trustees, Utica Township Fire Protection District v. Utica Township Volunteer Fire Fighters Association d/b/a/ New Chapel Emergency Medical Service and New Chapel Volunteer Fire Company, et al.*, and assigned Case No. 10D06-2408-PL-75 (the "District Action").

20. In its complaint, the District alleged that it owns all the Debtors' property and sought "Temporary and permanent injunctive relief and specific performance

immediately prohibiting Defendants from selling any and all property, regardless of the manner in which such property is currently titled." Ex. B at 6, 13.

21. The Debtors deny that the District has any ownership or other interest in the Property or in any of the Debtors' other property, and responded accordingly in state court.

22. On October 28, 2024, after a hearing, the state court granted the District a preliminary injunction. On May 13, 2025, the state court revised its order, which is attached hereto as **Exhibit C** (the "State Court Order"). The State Court Order enjoins the Debtors

> and their agents, representatives, successors, assigns, and any other person or entity acting in concert with them . . . from selling by auction or otherwise . . . leasehold improvements, fixtures, appliances, and other items located on District-owned and controlled real estate . . . [and] vehicles and equipment, including fire trucks and fire engines transferred to the Association and/or the Department by the District, regardless of the manner in which such equipment is currently titled.

Ex. C at pp. 7–8.

## RELIEF REQUESTED

23. The Debtors request that the Court enter an order substantially in the form of the proposed order attached as **Exhibit D** hereto:

   a. finding that this Court has exclusive jurisdiction over the Property as property of the Association's bankruptcy estate under 28 U.S.C. § 1334 and §541 of the Bankruptcy Code.

   b. authorizing but not requiring the Debtors to sell some or all of the Property to John Jones pursuant to the terms of the John Jones Proposal and to execute any documentation necessary to effectuate the same;

   c. providing that John Jones shall take the Property free and clear of all liens, claims, interests, and encumbrances, known and unknown;

   d. directing that the sale of the Property be AS IS, WHERE IS, WITH ALL FAULTS;

    e. finding that (*i*) John Jones is a good faith purchaser pursuant to § 363(m) of the Bankruptcy Code and that the proposed sale represents an arms'-length transaction between the parties, and (ii) that John Jones, its affiliates, and the Debtors did not act, pursuant to an agreement or otherwise, to control the price of the Property and, accordingly, provides that the sale is not subject to avoidance under § 363(n) of the Bankruptcy Code;

    f. finding that § 363(f) of the Bankruptcy Code is satisfied with respect to any liens, claims, interests, or encumbrances in or against the Property;

    g. authorizing the Debtors to receive the proceeds of the sale of the Property and utilize them in a manner consistent with the *Order Approving Interim Use of Cash Collateral* [ECF No. 31] and other past and future orders of the Court;

    h. granting such other relief as is necessary to effectuate the sale contemplated hereby; and

    i. waiving any stay contemplated by Bankruptcy Rule 6004(h) or otherwise, such that the order granting this Motion shall be effective immediately.

## GROUNDS FOR RELIEF

### A. *The Sale Should Be Authorized Under § 363(b).*

24. The Bankruptcy Code provides that a debtor-in-possession "may . . . sell . . . other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). "All sales not in the ordinary course of business may be by private sale or by public auction." Fed. R. Bankr. P. 6004(f)(1). A large measure of discretion is accorded a bankruptcy court in deciding whether a sale of a debtor's assets should be approved. *See In re Nicole Energy Servs.*, 385 B.R. 201, 230 (Bankr. S.D. Ohio 2008); *see also In re Embrace Sys. Corp.*, 178 B.R. 112, 123 (Bankr. W.D. Mich. 1995) (citing *In re Blue Coal Corp.*, 168 B.R. 553, 564 (Bankr. M.D. Pa. 1994)).

25. Although § 363 does not provide an express standard for determining whether a court should approve any particular proposed sale of estate property, courts

nearly uniformly apply the "business judgment" test. *See, e.g.*, *Fulton State Bank v. Schipper (In re Schipper)*, 933 F.2d 513, 515 (7th Cir. 1991) (citing *Inst'l Creditors of Cont'l Air Lines v. Cont'l Air Lines (In re Continental Air Lines)*, 780 F.2d 1223, 1224 (5th Cir. 1986); *Stephens Indus. v. McClung (In re McClung)*, 789 F.2d 386, 390 (6th Cir. 1986). Bankruptcy courts in the Seventh Circuit allow "considerable discretion" and "great judicial deference" to the debtors and trustees 363 sale proposals, *In re Efoora, Inc.*, 472 B.R. 481, 488 (Bankr. N.D. Ill. 2012) (quotations omitted); *accord In re Telesphere Comm'ns, Inc.*, 179 B.R. 544 (Bankr. N.D. Ill 1994). Generally, a court will not substitute its business judgment for that of a trustee (*see Stephens Indus. Inc., v. McClung (In re McClung)*, 789 F.2d 386, 389–90 (6th Cir. 1986)) and will approve a proposed sale of property outside the ordinary course of business if such a sale represents sound business judgment. *See, e.g.*, *In re Lionel Corp.*, 722 F.2d 1063, 1070–71 (2d Cir. 1983); *In re Allegheny Int'l, Inc.*, 117 B.R. 171, 176–77 (W.D. Pa. 1990); *In re Stroud Ford, Inc.*, 163 B.R. 730, 732 (Bankr. M.D. Pa. 1993); *In re Airlift Int'l, Inc.*, 18 B.R. 787, 789 (Bankr. S.D. Fla. 1982) (recognizing congressional intent to limit Court involvement in business decisions by a trustee).

26. A sale of estate assets like that proposed by the Motion is appropriate if: (a) there is a sound business purpose for the sale, (b) proper notice has been given, (c) the proposed sale process is fair and reasonable, and (d) the debtor has acted in good faith. *In re Schipper*, 933 F.2d at 515.

27. Here, the Debtors satisfy all four elements. The Debtors have a sound business purpose for liquidating the Property to maximize recovery for their estates. The Debtors selected the John Jones Proposal after evaluating alternative options, determining that the Property is of such a specialized nature that alternative means of disposition like those the Debtors are inclined to employ for other, more typical vehicles in their fleet, such as a sale through an auctioneer, would pose unacceptable risk. With the experience gained from their investigation and marketing efforts, the Debtors believe that the John Jones

Proposal offers the best value for the Property, considering the costs and delays posed by other alternatives.

### B. The Court Has Exclusive Jurisdiction over The Property Notwithstanding the District Action.

28. This Court has exclusive jurisdiction over property of the Debtors' estates, including the Property that this Motion proposes to sell, notwithstanding the pendency of the District Action or the preliminary injunctive relief granted in the State Court Order or otherwise granted by the state court.

29. The fundamental principle governing this issue was recognized by the Supreme Court over sixty years ago in, which held that "state courts are completely without power to restrain federal-court proceedings in *in personam* actions." *Donovan v. City of Dallas*, 377 U.S. 408, 412–13 (1964). In *Donovan*, the Supreme Court emphasized that federal rights "cannot be taken away by the State" and that state courts lack "power to restrain federal-court proceedings" through "contempt proceedings or otherwise." *Id.* at 414.

30. The Ninth Circuit's decision in *Gruntz v. County of Los Angeles (In re Gruntz)*, 202 F.3d 1074 (9th Cir. 2000), applied *Donovan* to the bankruptcy context and made clear that *Donovan*'s holding applies with even greater force to bankruptcy proceedings. The *Gruntz* court explained:

> [A] state court judgment entered in a case that falls within the federal courts' exclusive jurisdiction is subject to collateral attack in the federal courts. . . . Congress, because its power over the subject of bankruptcy is plenary, may by specific bankruptcy legislation create an exception to that principle and render judicial acts taken with respect to the person or property of a debtor whom the bankruptcy law protects nullities and vulnerable collaterally.

*Id.* at 1079–80 (quoting *Kalb v. Feuerstein*, 308 U.S. 433, 438–39 (1940)).

31. The *Gruntz* court explained that *Donovan*'s "holding applies even more strongly to federal *in rem* proceedings under the Bankruptcy Code, in which a 'federal court having custody of such property has exclusive jurisdiction to proceed.'" 202 F.3d at 1082. The court emphasized that "any state court modification of the automatic stay would

constitute an unauthorized infringement upon the bankruptcy court's jurisdiction" and that "actions taken in violation of the automatic stay are void." *Id.* at 1082.

32. *Rooker-Feldman* is not implicated here, and would not be even if the State Court Order were final and actually litigated within the meaning of preclusion doctrine. On the contrary,

> A bankruptcy court simply does not conduct an improper appellate review of a state court when it enforces an automatic stay that issues from its own federal statutory authority. In fact, a reverse *Rooker-Feldman* situation is presented when state courts decide to proceed in derogation of the stay, because it is the state court which is attempting impermissibly to modify the federal court's injunction.

*Id.* at 1083.

33. The principle that bankruptcy courts must assert their jurisdiction over core matters, even when preliminary injunctions are involved, is further illustrated by *In re Dolen*, 265 B.R. 471 (Bankr. M.D. Fla. 2001). In *Dolen*, the Federal Trade Commission had obtained a preliminary injunction in district court before the debtor filed bankruptcy. The *Dolen* court firmly rejected a request to abstain from determining the scope of the automatic stay, holding that "the applicability and scope of the automatic stay is a core matter" and is "central to a bankruptcy case." *Id*. at 477. The court emphasized that bankruptcy courts

> exist[] as a unit of the district court to decide the fundamental bankruptcy administration issues the parties have submitted to it ... [D]ividing the responsibility for determining issues so integral to the administration and confirmation processes would effectively destroy this court's ability to perform the function for which it was created.

*Id.* at 477–78.

34. Any nonbankruptcy proceeding that threatens to undermine the bankruptcy court's jurisdiction over debtors and their estates is subject to preemption by bankruptcy proceedings. The principle that preliminary injunctive relief ordered by nonbankruptcy courts may not interfere with bankruptcy courts' *in rem* jurisdiction over estate property is further supported by Seventh Circuit precedent describing the circumstances in which bankruptcy courts should exercise their authority under § 105(a) of

the Bankruptcy Code to enjoin nonbankruptcy proceedings that fall outside the scope of the automatic stay but nevertheless are related to a bankruptcy case. *See Fisher v. Apostolou*, 155 F.3d 876, 882 (7th Cir. 1998) (quoting *In re L&S Inds., Inc.*, 989 F.2d 929, 932 (7th Cir. 1993) for the proposition that "a bankruptcy court can enjoin proceedings in other courts when it is satisfied that such proceedings would defeat or impair its jurisdiction over the case before it")*.*

35. Here, the Property is unquestionably property of the estate under § 541 of the Bankruptcy Code. The automatic stay under § 362 of the Bankruptcy Code protects the Debtors' ability to administer property of the estate, including the proposed sale of the Assets. Any prepetition state-court injunction that purports to prevent a bankruptcy court from exercising its jurisdiction over estate property is both (a) stayed automatically insofar as giving it continued effect would constitute (*i*) the continuation of a prepetition proceeding against the debtor, (*ii*) the enforcement of a prepetition judgment, and (*iii*) an act to exercise control over property of the estate, *see* 11 U.S.C. § 362(a)(1)–(3), and (b) preempted by the bankruptcy court's orders concerning the disposition of estate property. Here, the State Court Order is both stayed and—more to the immediate point implicated by this Motion—preempted by this Court's orders, including any order granting this Motion.

36. Moreover, this Court has *exclusive* jurisdiction over property of the estate under 28 U.S.C. § 1334(e) and the authority—and duty, when properly called upon—to determine what constitutes property of the estate under § 541 of the Bankruptcy Code. The State Court Order may not be construed to prevent this Court from exercising its jurisdiction over the Property or authorizing its sale in accordance with the Bankruptcy Code. As the Ninth Circuit court observed, allowing state courts to issue judgments limiting or modifying federal bankruptcy protections "would undermine the principle of a unified federal bankruptcy system, as declared in the Constitution and realized through the Bankruptcy Code." *Gruntz*, 202 F.3d at 1083–84.

### C. *The Property Should Be Sold Free and Clear Under § 363(f).*

37. Under § 363(f) of the Bankruptcy Code, the Court may authorize the sale of the Property free and clear of liens, interests, claims, and encumbrances. Section 363(f) permits such sales when any one of five alternative conditions is satisfied: (a) applicable nonbankruptcy law permits sale of such property free and clear of such interest; (b) such entity consents; (c) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property; (d) such interest is in bona fide dispute; or (e) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest. 11 U.S.C. § 363(f)(1)–(5); *Citicorp Homeowners Serv., Inc. v. Elliot (In re Elliot)*, 94 B.R. 343, 345 (E.D. Pa. 1988) (noting that § 363(f) is written in the disjunctive; therefore, a court may approve a sale "free and clear" provided at least one of the subsections is met); *accord In re Dundee Equity Corp.*, No. 89-B-10233, 1992 Bankr. LEXIS 436, at *12 (Bankr. S.D.N.Y. Mar. 6, 1992); *In re Bygaph, Inc.*, 56 B.R. 596, 606 n.8 (Bankr. S.D.N.Y. 1986).

38. Section 363(f) is supplemented by § 105(a) of the Bankruptcy Code, which provides that "[t]he Court may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a). Courts concluding that section 363(f) does not empower them to convey assets free and clear of prepetition claims have nonetheless held that § 105(a) provides them with the equitable power to authorize sales free and clear of interests that are not specifically covered by § 363(f). *See, e.g.*, *In re General Motors Corp.*, 407 B.R. 463, 499–504 (Bankr. S.D.N.Y. 2009) (discussing Second Circuit precedent permitting sale of assets "free and clear" of successor liability claims pursuant to §§ 363(f) and 105(a)) (internal citations omitted); *Volvo White Truck Corp. v. Chambersburg Beverage, Inc. (In re White Motor Credit Corp.)*, 75 B.R. 944, 948 (Bankr. N.D. Ohio 1987).

39. Here, the requirements of § 363(f) are satisfied. Based on the Debtors' review of their records and the preliminary investigation into potential liens and

encumbrances, the Debtors believe that there are no liens against the Property—certainly none are perfected under Indiana law, since the property consists of titled vehicles and no liens are indicated on the titles. To the extent that the District or any other party asserts an interest in the Property, such an interest will be most certainly disputed by the Debtors, such that § 363(f)(4) is satisfied. In any event, the Debtors will provide proper notice of this Motion, and any party failing to object to the proposed sale will be deemed to have consented under § 363(f)(2).

### D.    *Notice Is Appropriate and Sufficient.*

40.     Notice of this Motion and the deadline to object to it has been provided in accordance with Bankruptcy Rules 2002 and 6004 and Local Rules B-6004-1 of this Court. The Debtors have served this Motion on: (a) the Office of the United States Trustee; (b) all known creditors of the Debtors; (c) any parties known to claim an interest in the Assets; (d) the Internal Revenue Service; and (e) all other parties entitled to notice under applicable law.

### E.    *The Order Granting This Motion Should Be Effective Immediately upon Entry.*

41.     Bankruptcy Rule 6004(h) provides that an "order authorizing the use, sale, or lease of property . . . is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise."

42.     Here, good reason exists for the Court to decline to impose a stay of effectiveness of the order granting this Motion, because time is of the essence to the Debtors, who continue to incur the expense of insuring and maintaining the Property and will until the Property is sold. As noted by the subchapter V trustee at the first-day hearing in these Chapter 11 Cases, the Debtors' budget forecasts a negative cash flow during the early stages of these cases and the Debtors must work to reduce their expenses to match their revenues. Elimination of the insurance and storage expense associated with the Property and other unnecessary portions of the Debtors' fleet will go a long way toward accomplishing that goal.

43. The Debtors are not seeking to expedite consideration of the Motion, which will go out on 21 days' notice. There is cause not to delay the effectiveness of the order another two weeks beyond that.

[ *Remainder of Page Intentionally Blank* ]

## NOTICE OF OBJECTION DEADLINE

**NOTICE: Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one in this bankruptcy case. If you do not have an attorney, you may wish to consult one.**

If you do not want the court to grant the Motion, or if you want the court to consider your views on the Motion, then the deadline for you or your attorney to file a written objection with the Court explaining your position is **August 26, 2025**.

Objections may be delivered by U.S. Mail, courier, overnight/express mail, or in person to the Clerk's office address shown below. If you mail your objection, you must mail it early enough so the Court will receive it on or before the applicable deadline. The Court's address is:

> United States Bankruptcy Court
> 110 U.S. Courthouse
> 121 West Spring Street
> New Albany, IN 47150

You **must** also send a copy of your objection to:

> PAULINE BENICH
> SEILLER WATERMAN LLC
> Meidinger Tower – 22nd Floor
> 462 S. Fourth Street
> Louisville, KY 40202

If you or your attorney do not take these steps, the court may decide that you do not oppose the Court granting the relief requested.

**PRAYER**

WHEREFORE, the Debtors pray for an order in form and substance similar to the proposed order tendered herewith, and that they be awarded all other appropriate relief.

Respectfully submitted,

*/s/ William P. Harbison*
WILLIAM P. HARBISON
JOSEPH H. HADDAD
ADAM B. BUCKMAN
SEILLER WATERMAN LLC
Meidinger Tower – 22nd Floor
462 S. Fourth Street
Louisville, KY 40202
Phone: 502-584-7400 | Fax: 502-583-2100
E-mail: harbison@derbycitylaw.com
E-mail: haddad@derbycitylaw.com
E-mail: buckman@derbycitylaw.com
*Proposed counsel for the Debtors*

*G:\doc\WPH\Utica Township Fire Dept\Pleadings\Motion to Sell -- John Jones.docx*

## CERTIFICATE OF SERVICE

I certify that on August 5, 2025 the foregoing Motion was filed electronically with the Clerk of the Bankruptcy Court using the Electronic Case Filing System. In compliance with Local Rule 9036-1, a true and complete copy of the Motion was served electronically via the Court's Electronic Case Filing System upon the United States Trustee and all parties of record registered for electronic notice, including:

- U.S. Trustee: ustpregion10.in.ecf@usdoj.gov
- Matthew Miller, *counsel for the United States Trustee*: matthew.miller@usdoj.gov
- Dennis J. Perrey, Subchapter V Trustee: dennis.perrey@yahoo.com
- Heather M. Crockett, DAG, *counsel for the State of Indiana*: heather.crockett@atg.in.gov
- Lydia Golten, DAG, *counsel for the State of Indiana*: lydia.golten@atg.in.gov
- Matthew R. Lindblom, *counsel for The New Washington State Bank*: matthew.lindblom@skofirm.com
- Gregory L. Taylor, *counsel for Utica Township Fire Protection District*: gtaylor@louisvillelawyers.com

I further certify that a true and complete copy of the foregoing document was served by USPS first class mail, postage prepaid to:

- Board of Fire Trustees, Utica Township Fire Protection District
  Utica Town Hall
  107 N. 4th St.
  Jeffersonville, IN  47130

```
7710 Insurance Company           AFCO Insurance Premium              Jackie Clowers
1 North Cantey Street, Suite     Finance                             Waters, Tyler, Hofmann &
106                              150 N. Field Dr., Suite 190         Scott, LLC
Summerton, SC 29148              Lake Forest, IL 60045               1947 E. Spring St.
                                                                     New Albany, IN 47150
```

| | | |
|---|---|---|
| American Express<br>POB 650448<br>Dallas, TX 75265-0448 | Chris McCarty<br>511 Little League Boulevard<br>Clarksville, IN 47129 | |
| REV Federal Credit Union<br>P.O. Box 118000<br>Charleston, SC 29423 | Counterpart Insurance<br>440 North Barranca Avenue,<br>Suite 7008<br>Covina, CA 91723 | KS State Bank<br>1010 Westloop Place<br>Manhattan, KS 66502 |
| Samsara<br>1 De Haro St.<br>San Francisco, CA 94107 | Kubota<br>PO Box 2046<br>Grapevine, TX 76099 | Stryker Flex Financial<br>1941 Stryker Way<br>Portage, MI 49002 |
| The Hartford Insurance Co<br>690 Asylum Avenue<br>Hartford, CT 06155 | Thorntons Fleet Works<br>PO Box 13050<br>Overland Park, KS 66282 | Mercedes Benz Finance<br>POB 9001680<br>Louisville, KY 40290-1680 |
| Zoll Data Systems<br>11802 Ridge Pkwy, Ste 400<br>Broomfield, CO 80021 | | |

/s/ William P. Harbison
WILLIAM P. HARBISON

G:\doc\WPH\Utica Township Fire Dept\Pleadings\Motion to Sell -- John Jones.docx